**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0757n.06

No. 11-1883

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jul 13, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| DAVID SCOTT ALBERS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant David Scott Albers pled guilty to using interstate facilities in furtherance of committing a murder-for-hire, in violation of Title 18, United States Code, Section 1958(a), and was sentenced to 120 months' imprisonment. He appeals, claiming that his sentence is both procedurally and substantively unreasonable. We disagree and therefore affirm.

I.

David Albers was charged in state court with soliciting the murder of his wife Andrea. While he was incarcerated pending trial on this charge, he encountered a man he knew named John Floyd. Albers asked Floyd to assist him in finding someone to kill Andrea, as well as the undercover police officer who was the crucial witness in his case. Floyd was soon transferred to federal custody, but

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

Albers asked Floyd to stay in touch with him after the transfer, and said that he would use the code phrase "kitchen job" when he wanted to discuss his plan to hire a hit man.

After Floyd was transferred to a federal penitentiary in Kentucky, he began receiving letters from Albers, and emails from Albers's girlfriend, asking about his progress on the "kitchen job." Floyd became concerned that Albers was serious about the job and informed the authorities. Federal agents met with Floyd and asked him to tell Albers that he had found someone to murder Albers's wife. Floyd did so, emailing Albers's girlfriend with news that a man named "Scott Jameson" would be visiting Albers at the Ionia State Penitentiary to discuss the job.

"Scott Jameson" was, of course, an undercover police officer. During Jameson's multiple visits to the jail, Albers and Jameson discussed how they could make Andrea's murder look like an accident; Albers suggested, for example, that she could be pushed down the stairs. Albers also told Jameson where Andrea lived, the layout of her house, who lived there with her, and sent Jameson a photograph of her. Albers and Jameson agreed that the price for Andrea's murder would be $2,500.

On October 13, 2010, federal investigators confronted Albers regarding his dealings with Jameson. Albers initially claimed that Jameson was a building contractor that he had business dealings with, and, when shown the photograph of Andrea he had sent to Jameson, he claimed that he did not know who she was. Once the investigators told Albers that Jameson was a police officer, however, he admitted that he had tried to hire Jameson to kill Andrea. Albers later pled guilty to

using interstate facilities in furtherance of committing a murder-for-hire, in violation of Title 18, United States Code, Section 1958(a).

A presentence report calculated Albers's sentencing Guideline range as 108 to 135 months, which it truncated to 120 months in accordance with the statutory maximum. The report also recommended that Albers's sentence be imposed consecutively with his existing state sentence. Albers did not object to the presentence report, but argued at the sentencing hearing that the court should impose a concurrent, rather than a consecutive, sentence. The district court rejected Albers's arguments and imposed a consecutive sentence of 120 months' imprisonment.

Albers timely appeals.

## II.

Albers claims that his 120-month sentence is substantively unreasonable because his conduct does not warrant the longest possible sentence for the crime. He also claims that his sentence is procedurally and substantively unreasonable because the district court ordered it to run consecutively, rather than concurrently with his state sentence. We address each of these arguments in turn.

A district court's sentencing determination is reviewed "under a deferential abuse-of-discretion standard" for reasonableness. *Gall v. United States*, 552 U.S. 38, 41 (2007). A sentence is procedurally unreasonable if "it is marked by significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or

failing to adequately explain the chosen sentence[.]" *United States v. Brown*, 557 F.3d 297, 299 (6th Cir. 2009) (internal quotation marks and citation omitted). A sentence is substantively unreasonable when a district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008). We may apply a presumption of reasonableness to sentences, like Albers's, that fall within the advisory Guideline range. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc).

Albers contends that the presumption of substantive reasonableness has been overcome in this case because his conduct is not deserving of the maximum possible punishment. He notes that we have previously emphasized the importance of proportionality between a sentence and the seriousness of the offense; that proportionality was a key consideration in the creation of the Guidelines; that § 3553 instructs courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6); and that, in some cases in this circuit, defendants have received lesser sentences for the same crime based on conduct that Albers believes is more serious than his own. We find Albers's arguments meritless.

Our decision in *United States v. Poynter*, 495 F.3d 349 (6th Cir. 2007), which Albers relies on as support for his proposition that the presumption of reasonableness has been rebutted because he received the harshest possible sentence, is not on point. *Poynter* addressed a district court's imposition of an *above*-Guideline's sentence, not a *within*-Guideline's one. And, properly applied, the Guidelines themselves provide a better measure of proportionality than do statutory maximums

because they allow for more nuanced comparisons both within and between cases.  Moreover, in *Poynter*, we remanded for resentencing because the reasons the district court gave for imposing the statutory maximum sentence—"Poynter is unsafe to children" and "can't control himself"—were potentially applicable to all persons convicted of the same offense. *Id.* at 353.  The same cannot be said here.

In this case, the district court found that Albers's offense was very serious "in light of the fact that this is the second time that [he] has attempted the same crime, and that he did so while imprisoned for the first attempt to have his wife murdered."  The Honorable Janet T. Neff properly discussed and considered Albers's history and character, including Albers's effort to involve his children in murdering their mother, and the fact that he continues to present a danger to his wife.  Finally, the district court found that if any correctional treatment could help Albers overcome his anger and destructive behavior toward his family, it would take a long time to accomplish.  This thoughtful analysis confirms the reasonableness of Albers's already presumptively reasonable sentence.

Albers's citation of other cases where defendants received lower sentences for the same criminal offense is unavailing.  Contrary to Albers's contention, he need not have created a detailed murder plan, actually paid a hit man, or taken any other specific action in order for the district court's imposition of the statutory maximum sentence to be substantively reasonable.  The fact that Albers attempted to kill his wife while serving a sentence for a prior effort to do exactly the same thing readily distinguishes his case from any of the other cases that he cites, and not in a way that

convinces us that the district court's imposition of a 120-month sentence was wrong, let alone unreasonable. Albers's suggestion that the differences *between* the multiple versions of the crime listed in 18 U.S.C. § 1958(a) somehow provides a standard for assessing the seriousness of crimes *within* each version is simply illogical. Accordingly, we reject Albers's contention that his sentence is substantively unreasonable because it is disproportionate to his offense.

This leaves Albers's argument that the district court's imposition of a consecutive sentence, rather than a concurrent sentence, rendered his sentence unreasonable. This argument takes two tacks. First, Albers claims that his sentence is both procedurally and substantively unreasonable because the district court failed to adequately explain the basis for its decision to impose a consecutive sentence. Second, Albers argues that the district court's decision to impose a consecutive sentence was procedurally unreasonable because the district court failed to address the commentary to U.S.S.G. § 5G1.3(c) in making its determination. We disagree on both counts.

A challenge to a district court's decision to impose a consecutive or concurrent sentence is not easily classified as "substantive" or "procedural" because an evaluation of the substantive reasonableness of a decision to impose a consecutive sentence depends heavily upon an evaluation of the procedural reasonableness. *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). The basic rule in such cases is that a district court does not abuse its discretion so long as it "makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009) (internal quotation marks omitted); *see generally* 18 U.S.C. § 3584(b).

Here, Albers contends that the district court selected a consecutive sentence without adequate explanation. But the district court imposed a consecutive sentence immediately following its evaluation of the § 3553(a) factors in setting Albers's sentence at the top of the Guidelines range. And those same reasons clearly drove the district court's decision to make Albers's sentence consecutive, especially since a concurrent sentence could have resulted in no additional prison time for Albers in light of the indeterminate nature of his state sentence. A district court is under no obligation to repeat its § 3553(a) analysis in such circumstances. *Berry*, 565 F.3d at 343. Moreover, the district court did in fact briefly reiterate its rationale for imposing a consecutive sentence: Albers "continues to be a danger to his ex-wife" and such a sentence is necessary "to achieve reasonable punishment for the instant offense." The district court's explanation was adequate.[1]

Finally, Albers argues that his sentence is procedurally unreasonable because the district court failed to address the commentary to U.S.S.G. § 5G1.3(c) in deciding to make his sentence consecutive. The problem with this argument is that § 5G1.3(c) and the application notes thereto apply "[i]n any other case involving an undischarged term of imprisonment." U.S.S.G. § 5G1.3(c). This case is not "any other case" because it is expressly governed by U.S.S.G. § 5G1.3(a): "[i]f the instant offense was committed while the defendant was serving a term of imprisonment . . . , the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." *Id*. Accordingly, the district court did not impose a procedurally unreasonable

---

[1]Albers also implies that because of the district court's citation of *United States v. Figueroa*, 215 F. App'x 343 (5th Cir. 2007), it erroneously based its decision on the non-relatedness of the offenses under U.S.S.G. § 5G1.3(b). However, the district court was merely addressing an argument that *Albers made* in his sentencing brief.

sentence by failing to consider the expressly inapplicable language in U.S.S.G. § 5G1.3(c) and the

commentary to that provision. *Cf. United States v. Ward*, 436 F. App'x 601, 604 (6th Cir. 2011).

III.

For these reasons, we affirm the judgment of the district court.