*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-4072

JOSEPH A. HAIRSTON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00092—Algenon L. Marbley, District Judge.

Argued:  June 6, 2007

Decided and Filed:  September 10, 2007

Before:  MARTIN and BATCHELDER, Circuit Judges; O'MEARA, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Clair J. Evans, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Terry K. Sherman, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Daniel S. Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Gary L. Spartis, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant.  Terry K. Sherman, Columbus, Ohio, for Appellee.

MARTIN, J., delivered the opinion of the court, in which O'MEARA, D. J., joined. BATCHELDER, J. (pp. 9-10), delivered a separate dissenting opinion.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge.  The United States appeals Joseph Hairston's 60-month sentence, which was re-imposed by the district court on remand in light of *United States v. Booker*, 543 U.S. 220 (2005).  The government contends that the sentence is substantively unreasonable.  We disagree, and thus **AFFIRM** Hairston's sentence.

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

I

On May 13, 2002, Hairston pled guilty to one count of distributing more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). The presentence report determined that Hairston had a total offense level of 29 and a criminal history category of IV, yielding a Guidelines Range of 121 to 151 months' imprisonment. The Probation Office recommended a sentence at the bottom of that range. It also recommended an upper-end supervised release term (60 months), because this was not Hairston's first conviction for drug-related activities and because he committed the instant offense while on supervised release for a prior drug offense. Hairston then filed a motion for downward departure based on what he claimed to be "extraordinary post-offense rehabilitation" during the time between his release on his own recognizance and his eventual sentencing. As a condition of his pre-trial release, Hairston was "subject to electronic monitoring, had to submit to a random urinalysis, and was required to maintain verifiable employment." Joint App'x at 45. He complied with these terms, working 40-80 hours per week as a maintenance technician in an apartment complex and submitting 24 consecutive negative urine samples. *Id*. During this time, he supported his five dependent children and his significant other. *Id*. This led the district court to conclude that, "[w]hen considered in totality, these factors amount to extraordinary post-offense rehabilitation." *Id*. As the court elaborated in a sentencing hearing held on October 24, 2003:

> I analyzed whether [Hairston] was extraordinary, taking him from where he started and not comparing him to someone who was never involved in drug culture, because I thought that would be an unfair comparison. Compared to someone who had always taken the high road, . . . he is not extraordinary. But compared to the someone who has been steeped in this drug culture and who has spent a considerable portion of his life in this drug culture, his post-arrest rehabilitation has been extraordinary. And you're right, he has done little more than what he was required to do, but I see a number of instances where people are required to do certain things as a condition of their release and I don't have to tell you about the countless instances in which they are back here because they don't do it. And I was most impressed by his commitment to his work and his commitment to his support of his dependents, not to mention the fact that his urinalysis specimens have been negative. And that's something that is consequential for someone who has been, if not addicted to drugs, close to being addicted to drugs and who has been, you know, an integral part of the drug culture for most of his adult life.

*Id*. at 90-91. The district court then sentenced Hairston to a term of 60 months' imprisonment, which is the statutory minimum under section 841(b)(1)(B), to be followed by five years' supervised release. The district court styled this as an 8-level departure from the lower end of the Guidelines range. *Id*. at 45, 91. The 60-month sentence represented a 51% departure from the 121-month lower end of the range.

The government appealed, claiming that the district court had erred in granting Hairston such a significant downward departure under the then-mandatory Sentencing Guidelines. A panel of this Court vacated the sentence and remanded to the district judge for resentencing in light of *Booker*. *See United States v. Hairston*, 127 F. App'x 811 (6th Cir. 2005) (unpublished). The panel concluded as follows:

> While resentencing is required under *Booker*, we consider the remaining claims because the district court will need to consider the correct Guidelines-recommended sentence in fashioning its own post-*Booker* sentence on remand.

We do not think that the district court erred in reducing Hairston's sentence under the Guidelines based on extraordinary post-arrest rehabilitation. Even under the Guidelines framework, we are convinced that it was proper for the district court to reduce Hairston's sentence given the fact that "the defendant . . . achieved real gains in rehabilitating himself and changing his behavior."

The district court's grounds for post-offense rehabilitation in the instant case are sufficiently atypical of defendants similarly situated to Hairston to justify a reduction in Hairston's sentence under the Guidelines. As the district court pointed out, Hairston's pre-sentence investigation report suggests that Hairston abused drugs and alcohol for more than half of his life—since he was seventeen years old—and was unable to maintain consistent work since dropping out of school after completing the eighth grade. The report also indicated a number of drug-related arrests, including the underlying offense in this case.

Hairston's rehabilitation since this most recent arrest has been truly exceptional. During Hairston's pre-sentencing period, which lasted approximately seventeen months, he remained drug-free, as evidenced by twenty-four negative urine samples. During this period, Hairston also did not commit any legal violations, except for a minor traffic violation, and held a steady job as a maintenance technician, sometimes working as much as eighty hours per week. He also supported three children of his own, two stepchildren, and his significant other. We think that the district court was correct to consider Hairston's successful efforts to overcome his drug problems and transform his life sufficiently extraordinary to justify a reduction in his sentence for post-offense rehabilitation.
[. . .]

In this case, the district court found "the changes that the defendant has undertaken in his life to demonstrate . . . that [the]defendant has made a commitment to repair and rebuild his life." We agree that Hairston's changes are sufficient to demonstrate a genuine commitment to turning his life around such that he is unlikely to re-offend. Therefore, we think that the district court was justified in granting Hairston a downward departure under the Guidelines in light of his post-offense rehabilitation. While we are convinced that the district court did not err in departing downward under the Guidelines, we instruct the district court on remand to provide a more detailed rationale for the extent of its reduction in Hairston's sentence so that this Court can properly review for reasonableness on any subsequent appeal.

*Id.* at 813-15 (internal citations omitted).

At resentencing, the district court again imposed a term of 60 months' imprisonment. Elaborating substantially on its already thorough statements from the original sentencing, the court noted:

[T]o the extent that the [Sixth Circuit] asked me to articulate the reasons for the extent of my departure, I feel constrained at least to go through some of the factual considerations that persuaded me to depart eight levels. . . . My overarching concern was the extraordinary rehabilitation that I thought [Hairston] had undergone considering his previous involvement as a significant member of the drug culture. . . . [I]ndeed this [case] fits within the strictures of *United States v. Maddalena* [893 F.3d 815 (6th Cir. 1989)] where the court found that the district judge may consider defendant's efforts to stay away from drugs as a basis for departing under the guidelines; *United States v. Jones* [158 F.3d 492 (10th Cir. 1998)], the district court did not abuse its discretion in departing downward based on defendant's post-offense rehabilitation evidenced by his regular work counseling in support of his children, and *United States v. Lange* [241 F. Supp. 2d 907 (E.D. Wis. 2003)]. . . . *Lange* is

from the Eastern District of Wisconsin. But the court found downward departure for post-offense rehabilitation appropriate where the convicted drug dealer passed all random drug tests while in rehab, finished the drug treatment program and complied with conditions of release. . . .

   Now, turning to 3553(a), there are a number of factors that the Court can consider. I am considering the history and characteristics of the defendant certainly in looking at his employment and work effort, the fact that he has supported his children and the fact that he complied wholeheartedly with all of his post-offense arrest conditions. I am also looking at the fact that he rehabilitated himself and he, as I pointed out earlier, extricated himself from the drug culture. . . . Also in considering whether a departure would be warranted that would take him down to the statutory minimum of five years, I look at the nature and the circumstances of the offense. He was involved in drug transactions that I think did not exceed $1,600. . . . And he distributed a total of 38.6 grams of crack. His activities in this case were motivated by his addiction as opposed to his profit motive. It also appears, and one of the points that the government relied on at the previous hearing, . . . was the fact that he sold the [confidential informant] a gun. . . . If my reading of the presentence investigation report is correct, he got the gun at the urging of the [informant]. . . . I think it is slightly different than the situation in which you have a drug dealer who keeps firearms to protect his enterprise. And certainly we have a number of those and certainly that is why we have 924(c) counts for those instances where someone is using firearms in relation to the commission of a drug-related offense. We don't have that circumstance here. . . . I never once took the position that Mr. Hairston was not involved in the drug trade. He was heavily involved in it. But he had gotten out of it and I think that his actions demonstrated that he got out with the intent of remaining out and engaging in post-offense rehabilitation of an extraordinary nature, which was the basis of my earlier ruling.

   The parameters under 3553(a) also talk about the need to promote certain statutory objectives, such as to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrent to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the most effective manner. I think that a five year sentence adequately meets those objectives. Given the road to rehabilitation he is on, I think that it will provide — five years of a person's life provides adequate deterrence. He is going to be off the streets for five years so that will protect the public from future crimes of this defendant. . . . One other thing that I will also mention is that Mr. Hairston also agreed to cooperate with officials and tried to offer substantial assistance to the extent that it would warrant a motion by the government for reduction of sentence. But because he had been out of the drug trade, he was unable to effectuate the transactions that would have been of any import or that would have been significant enough to warrant the government making a motion for reduction of his sentence based on substantial assistance.

   So all of those factors under 3553(a), considering the advisory guidelines and the jurisprudence under post-offense rehabilitation, leave the Court to conclude that eight levels is justifiable because it puts him at a point of the statutory minimum and I believe that five years is a sentence that is adequate to meet the statutory concerns set forth in 3553(a)(2).

Joint App'x at 118-26.

   The government now renews its appeal, arguing that Hairston's 60-month sentence is substantively unreasonable. The government maintains that the district court "ignored the principles

of proportionality in varying downward by more than 50 percent to the statutory minimum sentence required for Hairston's crack cocaine distribution crime." Gov't Br. at 13.

## II

Our first observation is that this appeal flirts with being precluded by the law of the case doctrine. A prior panel of this court clearly stated: "We do not think that the district court erred in reducing Hairston's sentence under the Guidelines based on extraordinary post-arrest rehabilitation," and "we think that the district court was justified in granting Hairston a downward departure under the Guidelines in light of his post-offense rehabilitation." *Hairston*, 127 F. App'x at 813, 815. As such, there seems little reason for this panel to rehash the same issue. Nevertheless, the prior panel added a caveat to its above statements when it said: "While we are convinced that the district court did not err in departing downward under the Guidelines, we instruct the district court on remand to provide a more detailed rationale for the extent of its reduction in Hairston's sentence so that this Court can properly review for reasonableness on any subsequent appeal." *Id*. at 815. If we are to give any meaning to the prior panel's proviso that we be able to "properly review for reasonableness" the second time around, then the law of the case doctrine does not preclude us from once again reviewing Hairston's sentence for reasonableness, this time in light of the section 3553(a) justifications provided by the district court.

Thus we re-review for reasonableness the district judge's downward variance from the 121-month lower end of the Guidelines Range. We start from the now-familiar premise that "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (internal quotation marks omitted). In numeric terms, the 51% downward variance in this case is not particularly remarkable. After all, just within this past year we have *upheld* downward variances of 61%, 43%, 99.91%, 36%, and [effectively] 100% from the lower end of the guidelines range. *See United States v. Poynter*, — F.3d —, 2007 WL 2127353, at *4 (6th Cir. July 26, 2007) (collecting cases). Likewise, within the past year we have *vacated* downward variances of 66%, 43%, and 99.89%. *Id*.

During the resentencing hearing, the district court offered no shortage of section 3553(a) justifications for Hairston's variance, to wit:

- I am considering the history and characteristics of the defendant certainly in looking at his employment and work effort, the fact that he has supported his children and the fact that he complied wholeheartedly with all of his post-offense arrest conditions. I am also looking at the fact that he rehabilitated himself and he, as I pointed out earlier, extricated himself from the drug culture. [§ 3553(a)(1)]

- Also in considering whether a departure would be warranted that would take him down to the statutory minimum of five years, I look at the nature and the circumstances of the offense. He was involved in drug transactions that I think did not exceed $1,600. . . . And he distributed a total of 38.6 grams of crack. His activities in this case were motivated by his addiction as opposed to his profit motive. [§ 3553(a)(1)]

- I never once took the position that Mr. Hairston was not involved in the drug trade. He was heavily involved in it. But he had gotten out of it and I think that his actions demonstrated that he got out with the intent of remaining out and engaging in post-offense rehabilitation of an extraordinary nature, which was the basis of my earlier ruling. [§ 3553(a)(1)]

- Given the road to rehabilitation he is on, I think that it will provide — five years of a person's life provides adequate deterrence.  [§ 3553(a)(2)(B)]

- He is going to be off the streets for five years so that will protect the public from future crimes of this defendant.  [§ 3553(a)(2)(C)]

- So it's a matter of specific deterrence, I've referenced general deterrence, and Mr. Hairston certainly can take advantage of educational and vocational training and any other correction treatment to continue with his rehabilitation.  [§ 3553(a)(2)(D)]

- I believe that five years is a sentence that is adequate to meet the statutory concerns set forth in 3553(a)(2).  [§ 3553(a) - "parsimony provision"]

Joint App'x at 122-23,124-26.

The government advances two principal arguments as to why Hairston's 60-month sentence is substantively unreasonable.  First, it notes that a defendant with a total offense level of 29 (like Hairston's) but a criminal history category of I (unlike Hairston's IV), would have faced a Guidelines range of 87 to 108 months' imprisonment.  Thus, while recognizing that in crafting a variance the district court was entitled to take Hairston's post-offense rehabilitation into account, the government asserts that the net effect was to give Hairston a lower sentence than that recommended for a defendant convicted of the same crime "who had never previously been in trouble with the law."  Gov't Br. at 18.  The government finds it ironic that Hairston received "an especially low sentence" precisely because he was "a defendant with a worse record."  *Id*.  "Under the logic of the district court's sentencing rationale," the government maintains, "a first-time offender who engaged in exactly the same crime and the same rehabilitative conduct as Hairston would not be entitled to the same maximum downward deviation, because his rehabilitation would be significantly less extraordinary."  *Id*. at 19.  Fair enough, but this argument glosses over the fact that a first-time offender who committed Hairston's crime would likely be able to benefit from aspects of § 3553(a) that are unavailing to Hairston himself, and thus he/she would not necessarily be entitled to less of a downward variance than Hairston.  A sentencing judge could come up with an equally compelling—though different—reason under § 3553(a) for why *both* a first-time offender *and* Hairston should receive a 60-month sentence, which in either event would represent a downward variance from the low end of the guidelines range.  Furthermore, the notion that Hairston is in some sense being "rewarded" for having "previously been immersed in a life of drugs and guns," Gov't Br. at 19, is not at all absurd.  The whole point of the sentencing judge's opinion is that individuals who are able to extricate themselves from such a life of drugs and guns are a rarity.  Sad as it may be, Hairston appears to have been unique among repeat drug offenders to have come before this district judge, in that he not only complied with the terms of his post-arrest rehabilitation, but exceeded them.  If the judge were not faced with "countless instances," Joint App'x at 91, in which defendants were back in his court having failed to comply with the terms of post-release rehabilitation, then Hairston's behavior would not have been extraordinary.  In short, the district judge's rationale for Hairston's reduction in sentence was considerably more nuanced than a simple statement that defendants with "worse record[s]" are entitled to "especially low sentence[s]."

The government's second point, not unrelated to the first, is that 60 months is the *statutory minimum* for the crime to which Hairston pled guilty, *see* 21 U.S.C. § 841(b)(1)(B)(iii), and thus it represents "the most extreme variance possible, leaving no room to make reasoned distinctions between defendant's variance and variances that other, more worthy defendants might deserve."  *Davis*, 458 F.3d at 499.  More "worthy" defendants, the government posits, include those with a "lesser criminal history" (as discussed above), those whose crime "did not involve firearms as well as drugs," those who "sold a smaller quantity of crack cocaine," or those who "provided assistance to the government while on post-arrest release."  Gov't Br. at 22.  What distinguishes this case from

*Davis*, however, is that the defendant in *Davis* was not subject to a statutory minimum. The district court in *Davis* had the authority, at least in principle, to sentence Davis to zero days in prison. And indeed, Davis's one-day prison sentence was roughly akin to no prison sentence at all. Yet in the instant case, as substantial as his variance may be, Hairston still faces the statutory minimum for his crimes: namely, a full five years in federal penitentiary. So unlike *Davis*, this is a tougher case, because it forces us to reconcile a statutory minimum with the so-called "parsimony provision" of § 3553(a), which commands a sentencing judge to "impose a sentence sufficient, but no greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." In a statutory minimum scenario such as this one, we find it difficult to simultaneously give full effect both to the logic of *Davis* and to the prudence of the parsimony provision.[1]

The district judge thoroughly articulated—not once, but twice—his reasons for the variance, and in the end obviously felt that Hairston's 60-month sentence was "sufficient, but no greater than necessary" to comply with the purposes of § 3553(a). Now imagine if, in a subsequent case, the same district judge is faced with a different defendant who is convicted of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), just like Hairston. Imagine further that in the district judge's mind this defendant is "more worthy" of a lower sentence than Hairston. The logical thing for the judge to do, especially if he wishes to give effect to the parsimony provision of § 3553(a), is to sentence this defendant to a term of *less* than 60 months. Yet the judge is prevented from doing this—absent a few potential exceptions largely within the government's power, *see* §§ 3553(e) and (f)—because of the 60-month statutory minimum imposed by Congress under 21 U.S.C. § 841(b)(1)(B)(iii). The statutory minimum has thus frustrated the district judge's ability to animate the parsimony provision. One could argue that Congress's mandate as to the statutory minimum supersedes its parsimony mandate under § 3553(a). This supports the government's argument that Hairston's 60-month sentence is unreasonably low. Yet an equally plausible view, under similar logic, is that the hypothetical defendant's sentence is unreasonably *high*.

The bottom line is that when deciding questions of "substantive unreasonableness" in the post-*Booker*, advisory-Guidelines world, we must continue to be wary of substituting our judgment for that of the district court. We find language from one of our colleagues quite instructive, even though it was not directed at the statutory minimum problem we face here:

> Very different sentences can be reasonable, because different factors that go into sentencing can be weighed differently. There exists no Platonic form of the most perfectly reasonable sentence for a particular crime. Reasonable minds can come to very different conclusions as to how much punishment is warranted for a particular criminal act. . . . Thus when Congress provides a range of punishments for a particular crime, there is no such thing as the "ideal" punishment that decision makers are trying to approach in determining the sentence. The factors that Congress requires us to consider can simply be weighed differently—actually very differently—by different reasonable people.

*United States v. Borho*, 485 F.3d 904, 917 (6th Cir. 2007) (Rogers, J., dissenting). Similarly, when Congress fixes in stone the absolute minimum punishment for a particular crime, district courts are even further constrained in their ability to mete out an "ideal" punishment. And when district courts are faced with these constraints, appellate courts should be even more cautious before they vacate a given punishment as substantively unreasonable.

---

[1] We also note that in addition to his 60-month jail term, Hairston received 5 years of supervised release, a period at the *upper end* of the range. Thus, to the extent that a defendant's sentence is to be viewed as including not just a prison term but also other liberty-restrictive provisions (such as supervised release or probation), there *is* room to sentence a defendant "more worthy" than Hairston to a lesser sentence: simply impose the 60-month minimum plus a period of supervised release that is *less* than five years.

III

For all of the above reasons, we **AFFIRM** the judgment of the district court.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting.  I agree with the majority that Hairston's sentence is procedurally reasonable.  In fact, this court cannot ask more of a district court, in terms of explaining the specific reasons for his sentence based on 18 U.S.C. § 3553(a), than the district court did in this case.  I dissent from the majority's opinion, however, because Hairston's sentence is substantively unreasonable.

## I. THE SENTENCE REDUCTION CONSTITUTED A DEPARTURE, NOT A VARIANCE

As a preliminary matter, I think it is useful to distinguish between a departure and a variance. The majority correctly points out that this case involves a departure, and not a variance.  A departure occurs when a court lowers a defendant's sentence based on Chapter 5 of the Guidelines.  *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006).  A variance, on the other hand, also known as a non-Guidelines departure, occurs when a court lowers a defendant's sentence based on factors found in 18 U.S.C. § 3553(a).  *Id*.  We have emphasized the distinction between departures and variances in the past, *United States v. Davis*, 458 F.3d 491, 497 (6th Cir. 2006), and — at least thus far — have simply assumed that the proportionality test at issue in this case applies to both departures and variances.  *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007).

## II. THE DISTRICT COURT'S SENTENCE IS SUBSTANTIVELY UNREASONABLE

As the majority points out, the "farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section [18 U.S.C.] 3553 (a) must be."  *Davis*, 458 F.3d at 496 (internal citations omitted).  This court can still find a sentence substantively unreasonable even if the district court, properly applying the Guidelines, clearly considering the § 3553(a) factors, and explaining its reasoning, calculates that sentence properly.  *Id*. (*citing United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006)).  In *Davis*, we reversed and remanded the district court's sentence because the court had imposed, essentially, the lowest possible prison sentence.  We concluded that "the sentence represents the most extreme variance possible, leaving no room to make reasoned distinctions between Davis's variance and the variance that other, more worthy defendants may deserve."  *Id*. at 499.  That is, we refused to accept a sentence that would leave no room for a more lenient sentence for a more deserving defendant.  In the case at bar, the majority is merely endorsing the same sentencing mistake we found objectionable in *Davis*.

The issue in this case is not that the district court reduced Hairston's sentence to 60 months in prison from a Sentencing Guidelines range of 121-151 months in prison, a 51% reduction.  As the majority correctly points out, this court recently accepted as substantively reasonable a sentence in which the district court awarded the defendant a 99.91% reduction in sentence.  *Husein*, 478 F.3d at 333.  The difference, however, is that the court in *Husein* found it difficult to imagine "more worthy defendants," short of those acquitted, which distinguishes that case from *Davis*.  *Id*. at 334.  The majority does not appear to contend that, in the case at bar, Hairston is the most worthy crack dealer.

Hairston was convicted of dealing five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  Moreover, Hairston had a criminal history category of IV, and he possessed a firearm at the time of his arrest.  Hairston's actions since his arrest are commendable, but he simply complied with the terms of his release.  That does not entitle him to the minimum sentence.  Furthermore, as the government correctly points out, the majority is rewarding Hairston

for having a checkered criminal past, and now rehabilitating himself by complying with the terms of his release. Although Hairston's renewed determination to be a contributing member of society warrants some departure from the Guidelines, a departure down to the minimum sentence mandated by Congress is substantively unreasonable.

The problem in this case, as it was in *Davis*, is that the district court sentenced Hairston to the minimum possible prison sentence, "leaving no room to make a reasoned distinction" between Hairston and more worthy defendants. *Davis*, 458 F.3d at 499. The majority attempts to distinguish *Davis* by noting that the defendant in that case was not subject to a statutory minimum. Hairston, the majority claims, does not suffer from the same problem from which the defendant in *Davis* suffered, because Hairston was sentenced to the statutory minimum of 60 months, rather than essentially zero days in prison. Extrapolating the majority's logic, then, Hairston is not *Davis* because Hairston at least received *some* prison time. Thus, the majority claims, this "is a tougher case, because it forces us to reconcile a statutory minimum with the so-called 'parsimony provision' of § 3553(a), which commands a sentencing judge to 'impose a sentence sufficient, but no greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)].'" Difficult or not, *Davis* still requires a sentencing judge to leave "room to make reasoned distinctions" between less worthy and more worthy defendants. *Husein*, 478 F.3d at 333-34.[1]

In deflecting the government's well-reasoned argument that a hypothetically more worthy defendant cannot possibly get a lesser sentence than Hairston's, the majority inexplicably exclaims that "an equally plausible view, under similar logic, is that the hypothetical defendant's sentence is unreasonably *high*." (emphasis original). That "plausible view" is not plausible here, because, in our system of governance, when Congress creates a mandatory minimum sentence in a statute, judges generally lack the "legal power to depart downward, no matter how unusual the special circumstances that call for leniency." *Harris v. United States*, 536 U.S. 570 (2002) (Breyer, J., concurring).

Congress created the mandatory minimum of 60 months when it passed 21 U.S.C. § 841 (b)(1)(B)(iii). In so doing, Congress mandated that anyone who violates § 841 (b)(1)(B)(iii) receives a baseline sentence of at least 5 years. Consequently, it matters not if a court believes that a defendant more worthy than Hairston is entitled to a prison sentence shorter than 60 months. Courts do not have the authority to make that determination; Congress has already made it for us. If Mother Teresa sold 5 grams of crack then she *could not possibly* get less prison time than the majority opinion approves for Hairston.[2] There are clearly "more worthy defendants" than Hairston. Therefore, Hairston's sentence is not substantively reasonable. *Davis*, 458 F.3d at 499.

### III. CONCLUSION

Respectfully, I cannot concur in the majority's holding that Hairston's sentence is substantively reasonable.

---

[1]In footnote 1, the majority states that Hairston's sentence is not the minimum because he will be subject to 5 years of supervised release, "a period at the *upper end* of the range." (emphasis original). This, the majority says, leaves room for a more worthy defendant to get a lesser sentence, because the court could simply impose a shorter period of supervised release. Such logic merely serves as an end-run around the requirements of *Davis*. Certainly, most people would prefer a greater period of supervised release to even a minimal period of incarceration.

[2] Under the Sentencing Guidelines Manual § 5K.1, upon motion of the government the court can depart below the mandatory minimum in sentencing a defendant who provides substantial assistance in the investigation or prosecution of another. *Melendez v. United States*, 518 U.S. 120, 125-26 (1996); *United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007). That provision is inapplicable here because the government did not make such a motion on Hairston's behalf.