NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0538n.06

No. 19-3762

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 17, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| WALTER D. BROWN, JR., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY, WHITE, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Walter D. Brown, Jr., appeals his above-Guidelines sixty-month sentence following a guilty plea to distributing heroin. Because Brown's sentence was substantively unreasonable, we VACATE the district court's judgment and REMAND for resentencing.

**I.**

Brown was charged in a one-count indictment with distributing heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) after he sold .28 grams of heroin to a confidential informant. Brown pleaded guilty to that count without a plea agreement. The probation office prepared a presentence investigation report (PSR) calculating a total offense level of ten and a criminal history category of VI, resulting in an advisory Guidelines range of twenty-four to thirty months' imprisonment. The PSR outlined Brown's lengthy criminal history beginning in 1996, when Brown was fifteen years old, listing more than thirty convictions. Although the majority of his

convictions involved driving offenses and other relatively minor charges, Brown also had been convicted of multiple counts of felony drug trafficking, offenses that all occurred within a four-month period and involved a small quantity of drugs.

At the sentencing hearing, the district court accepted the PSR's recommended Guidelines calculation without objection. The district court then gave notice that it was "contemplating an upward variance based upon the defendant's extensive criminal history . . . along with the type of conduct involved here, the distribution of heroin, which has obviously well-known types of problems . . . driven by the heroin epidemic in this area." R. 34, PID 155. In opposing an upward variance, Brown's counsel argued that the indictment was based on a single sale of a small quantity of heroin, which in state court would have subjected Brown to a maximum sentence of one year. He also argued that people like Brown did not create the opioid epidemic, and that the more culpable actors were the pharmaceutical companies that produced massive quantities of opioids. In allocution, Brown apologized, said he took full responsibility for his actions, and vowed to make use of whatever sentence is imposed by taking advantage of programs to better himself.

The government acknowledged that a quantity of drugs this small would ordinarily not be prosecuted in federal court, but explained that the government was now prosecuting "any provable case that involved heroin, any opiods [sic] and opiates" in this region of Ohio due to the opioid epidemic in the area. *Id.* at PID 161. The government also commented on Brown's lengthy criminal history and the ease with which the confidential informant was able to purchase heroin from him, which showed that Brown "is not some neophyte that just happened to be in the wrong place at the wrong time." *Id.* at PID 162. However, the government also argued in favor of a within-Guidelines sentence, noting that it did not "have any other charges that we could bring

forward with him in regards to any other type of drug trafficking," acknowledging that this "is an isolated, one-count indictment" involving a very small quantity of heroin. *Id.* at PID 162-63.

The district court disagreed with both parties and explained its reasons for varying upward. The district court recounted Brown's personal history and characteristics and the circumstances of the offense. It spent significant time recounting Brown's criminal history, taking "important note" of Brown's prior drug-trafficking convictions, *id.* at PID 169, and concluded that the earlier trafficking convictions showed that Brown "is not a one-time salesperson. He is someone who has been selling for quite some time," *id.* at PID 158.[1] It also noted that the number of previous convictions and relatively short sentences had not deterred Brown, and that he remains a risk to the community.

In addressing unwarranted sentence disparities, the district court noted that the national sentencing average for defendants with a criminal history category of VI sentenced for offenses under United States Sentencing Guideline (USSG) § 2D1.1 was 111 months. Further, the district court explained that, despite the small quantity of heroin charged, the offense was serious "given the nature of the type of drug involved here, heroin . . . [b]ecause obviously even one dose of heroin can serve to be fatal to an addict," *id.* at PID 170, and explained that heroin dealers are dangerous contributors to the opioid epidemic:

> [E]ven if there are problems that arose because of the prescription drugs, the opiod [sic] problem, as you've described, it has been exacerbated, if not made worse, by heroin traffickers who come into our community and feed those same persons who are addicted to opiods [sic]. And Mr. Brown's a person who needs to be deterred. He needs to be off the street to protect the public, to make sure he isn't continuing to traffic in drugs, particularly heroin, and also because of his long prior criminal record involving DUIs that alone, in addition to his drug trafficking, places him at a high risk of causing additional harm and danger to the community.

---

[1] The district court also summarized Brown's criminal history as including "35 adult convictions ranging from driving under suspension to child molestation," R. 34, PID 166, and later stated that child molestation is "a serious prior conviction," *id.* at PID 172. The child-molestation offense occurred in 2002, when Brown was 21 years old, and there is no information in the record about the offense conduct that led to the conviction.

*Id.* at PID 171.

After reviewing these factors, the district court applied a "substantial upward variance" and imposed a sixty-month sentence. *Id.* at PID 172. In response to the district court's invitation to raise any objections under *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004), Brown objected to the sentence, stating that the Guidelines range was appropriate. The district court responded by noting that the Guidelines are no longer mandatory and restating its analysis of the factors listed in 18 U.S.C. § 3553(a), again highlighting Brown's criminal history.

Brown now appeals.

**II.**

Brown argues that his sentence is substantively unreasonable because the district court failed to account for unwarranted sentence disparities or properly justify the substantial upward variance because the district court relied primarily on Brown's criminal history, which was already taken into account by the Guidelines. We review a district court's sentence for substantive reasonableness "under a deferential abuse-of-discretion standard." *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) (quoting *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015)). "The applicable Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008) (citation omitted). "If the sentence is within the Guidelines range, the appellate court may . . . apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007) (citation omitted).

> A district court may vary outside the Guidelines range if it explains how the present case is different from the typical or mine-run case that occupies the "'heartland' to which the Commission intends individual Guidelines to apply." But to avoid unfair

disparities with the typical case, we give closer review to a variance in a mine-run case. In sum, "in those cases that fall outside the Guidelines' 'heartland,' the district court's decision to deviate from the advisory range is entitled to the 'greatest respect,' whereas a sentence that departs from the advisory range in a 'mine-run case' warrants 'closer review'" of the district court's justifications for variance.

*United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (citations omitted). "While we do not use any form of strict proportionality review, the greater the district court's variance, the more compelling the evidence must be." *United States v. Robinson*, 669 F.3d 767, 775 (6th Cir. 2012) (citations omitted).

Brown primarily relies on our opinion in *United States v. Warren*, 771 F. App'x 637 (6th Cir. 2019). In that case, the defendant pled guilty to being a felon in possession of a firearm. *Id.* at 638. Although the government sought a within-Guidelines sentence of fifty-one to sixty-three months' imprisonment, the district court—the same district judge as in this case—imposed the statutory maximum sentence of 120 months. *Id.* There, as here, the district court justified its upward variance in part based on the defendant's lengthy criminal record, "noting that his 11 prior offenses included carrying a concealed weapon, fleeing from police, safecracking and breaking and entering, attempted felonious assault, discharge of a firearm on prohibited premises, and having a weapon under disability." *Id.* at 639. And there, as here, the district court noted that the defendant had not been deterred by his prior, more lenient sentences. *Id.* at 640.

We vacated the sentence. Although the district court "engaged in a thorough discussion of several factors set forth in 18 U.S.C. § 3553(a)," we found that

> in addressing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as required by § 3553(a)(6), the district court acknowledged that there was "definitely a disparity between this defendant's sentence and that of others," and the only reason the court gave for that disparity was Warren's criminal record.

*Id.* at 641. We determined that this reasoning failed to adequately address § 3553(a)(6). "Because the district court's only discussion of whether the selected sentence avoids unwarranted sentencing

disparities hinges on criminal history factors addressed by the Guidelines, the district court insufficiently distinguished Warren from other offenders in the same criminal history category." *Id.* at 642. As we explained, "[b]y 'relying on a problem common to all' defendants within the same criminal history category as Warren—that is, that they have an extensive criminal history— the district court did not give a sufficiently compelling reason to justify imposing the greatest possible deviation from the Guidelines-recommended sentence in this case." *Id.* (quoting *United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007)). Further, "reliance on Warren's criminal history without a fuller consideration of whether the selected sentence avoids unwarranted sentencing disparities was insufficient to justify such a stark departure from the Guidelines." *Id.* Accordingly, this court was "left with the definite and firm conviction that, in this case, the trial court imposed a sentence that was 'greater than necessary' in roughly doubling the recommended sentence." *Id.* at 643.

Given the obvious similarities in Brown's case and Warren's, we reach the same result. As in *Warren*, the district court relied primarily on Brown's extensive criminal history—a problem common to all defendants with a criminal history category of VI—to justify doubling his sentence from the top of the Guidelines range, and in doing so did not sufficiently account for avoiding unwarranted sentence disparities. This is particularly true in this case where the district court repeatedly stressed as a reason for the substantial variance Brown's prior trafficking convictions— all for a small amount of drugs that occurred within a four-month time frame—convictions that are not uncommon for defendants in Brown's criminal-history category.[2] *See Perez-Rodriguez*, 960 F.3d at 755. The district court also attempted to account for unwarranted sentence disparities

---

[2] *See U.S. Sentencing Comm'n, The Criminal History of Federal Offenders* at App'x Fig. 5 (May 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180517_criminal-history.pdf (indicating that 52.6% of defendants with a criminal history category of VI have at least one prior drug-trafficking conviction).

by citing the 2017 national average sentence of 111 months for defendants sentenced under USSG § 2D1.1 with a criminal-history category of VI, which is significantly higher than the sentence Brown received. Although we have previously noted that district courts may use national sentencing averages as a "starting point" to avoid unwarranted sentence disparities, *United States v. Stock*, 685 F.3d 621, 629 n.6 (6th Cir. 2012), the district court's reliance on the national average sentence for anyone sentenced under § 2D1.1 was inappropriate in this case. That Guideline section encompasses drug trafficking of all quantities and includes offenses with base offense levels that go as high as forty-three. In contrast, Brown's base offense level was twelve, and according to the Sentencing Commission's 2017 data, only 3.9% of defendants sentenced under § 2D1.1 had a base offense level of twelve or lower.[3] As the government noted, normally it would not prosecute such a small quantity of heroin. This suggests that Brown's offense was even less serious than other defendants with a base offense level of twelve, as that base offense level encompasses offenses involving more than thirty-five times the amount of heroin Brown sold. Although statistics can be used as a useful starting point, the statistics relied upon must be better tied to the defendant's circumstances than what the district court used here.[4]

The government argues that *Warren* is distinguishable, but none of its reasons is persuasive. The government points out that unlike *Warren*, the district court here did not impose the statutory maximum sentence. That is correct. However, the percentage change in the variance was similar, as both resulted in sentences that approximately doubled the high end of the

---

[3] *See U.S. Sentencing Comm'n, Use of Guidelines and Specific Offense Characteristics, Offender Based, Fiscal Year 2017*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2017/Use_of_SOC_Offender_Based.pdf.

[4] For example, in fiscal year 2018, 32.9% of heroin traffickers received a variance; of those, 92.7% received a below-range variance, and only 7.3% received an above-range variance with the average sentence increase being 114.2%. *See U.S. Sentencing Comm'n, Quick Facts, Heroin Trafficking Offenses*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Heroin_FY18.pdf.

Guidelines range. *Warren*, 771 F. App'x at 638; *see also Perez-Rodriguez*, 960 F.3d at 752, 758 (concluding that a twenty-four-month sentence that was less than double the top of the Guidelines range was substantively unreasonable despite the statutory maximum sentence being 120 months' imprisonment).

The government also argues that the district court's variance was reasonable because the district court explained that distributing heroin in an area hit hard by the opioid epidemic was particularly serious, relying on *United States v. Ford*, 724 F. App'x 428 (6th Cir. 2018). In *Ford*, we affirmed upward variances for two defendants who pled guilty to possession with intent to distribute heroin and fentanyl. *Id.* at 430. The first defendant, Williams, possessed 140.2 grams of fentanyl and was subject to a 120-month mandatory minimum sentence; the district court "varied upward from the 120-month mandatory minimum and imposed" a sentence of 180 months. *Id.* at 431. We rejected Williams's challenge to the substantive reasonableness of the sentence— that "his diminished mental capacity caused by several strokes and his lack of a history of violent crime [are] factors weighing against the district court's upward variance." *Id.* at 433. We explained that the district court addressed these arguments and reasonably explained that the strokes had not prevented Williams from engaging in criminal activity and that his "extensive history of heroin trafficking and gun possession was sufficiently deleterious to the community's well-being to warrant a high sentence even without a *violent* history of heroin trafficking and gun possession." *Id.* Further, we found that the "the district court placed a significant but not impermissibly high degree of importance on the impact of Williams's conduct on the local community," noting that the district court explained that it had "general philosophical difference[s] with the guidelines," that "[d]istrict courts have discretion to depart from the Guidelines on general

policy grounds," and that the Sentencing Commission had "recently proposed increased penalties under the Guidelines for fentanyl." *Id.* at 433-34 & 434 n.2 (citations omitted).

The second defendant, Ford, was found responsible for 155.1 grams of fentanyl that resulted in an advisory Guidelines range of forty-six to fifty-seven months' imprisonment. *Id.* at 431. "[C]iting 'the close proximity to schools,' the drug 'epidemic,' the 'deaths from these types of drugs,' and Ford's 'history and characteristics,' [the district court] varied upward from the Guidelines range of 46 to 57 months and sentenced Ford to 120 months of incarceration." *Id.* We rejected Ford's argument "that the district court placed unreasonable weight on Ford's criminal history and erroneously considered the proximity of Ford's residence, from which he distributed heroin, to local schools" because neither argument was developed, the district court sufficiently explained "why Ford's criminal history was underrepresented by his Guidelines range," and Ford failed to "point to any case suggesting that it is impermissible for a district court to consider a crime's proximity to schools when considering the appropriate sentence." *Id.* at 437.

*Ford* is distinguishable. As an initial matter, neither defendant in *Ford* made the argument that Brown makes here, and thus we did not consider whether the district court appropriately accounted for unwarranted sentence disparities. Further, the defendants in *Ford* were apparently operating a much larger drug-distribution operation; one of the defendants received only a 50% increase from his mandatory minimum sentence; and the defendants' criminal histories are unclear from the opinion—one was described as having an "extensive history of heroin trafficking and gun possession," which does not describe Brown, and the district court apparently adequately explained why the other defendant's criminal history was underrepresented by his Guidelines range, which the district court did not do here. *Id.* at 433, 437. Although we reasoned that a district court has the discretion to vary from the Guidelines based on general policy grounds, we did not

dispense with the requirement that the district court avoid unwarranted sentence disparities or otherwise justify such a dramatic variance. Thus, our unpublished opinion in *Ford* does not compel affirmance here.

Finally, the government argues that the district court's sentence is reasonable because it considered many of the § 3553(a) factors. But as in *Warren*, where the district court "engaged in a thorough discussion of several factors set forth in 18 U.S.C. § 3553(a)," 771 F. App'x at 641, the district court's consideration of other factors in this case does not adequately account for unwarranted sentence disparities or otherwise provide "sufficiently compelling" reasons for the substantial variance imposed, *Gall*, 552 U.S. at 50.

### III.

For the reasons set out above, we vacate the district court's judgment and remand for resentencing consistent with this opinion.

**CHAD A. READLER, Circuit Judge, dissenting.** With its front row seat at sentencing proceedings, the district court appropriately enjoys significant discretion in passing sentence. When that sentence comes before us on appeal, we might fairly "conclude[] that a different sentence was appropriate" had we swapped seats with the sentencing judge. *Gall v. United States*, 552 U.S. 38, 51 (2007). But that difference of opinion is not enough to justify undoing the district court's sentencing conclusions. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) ("It sometimes will happen that this independent inquiry will lead to a sentence below the guidelines, sometimes above them, and sometimes within them. But . . . we should be loath to override that required exercise of judgment lightly."); *United States v. Phinazee*, 515 F.3d 511, 519 (6th Cir. 2008) ("[I]n the post-*Booker*, advisory-Guidelines world, we must continue to be wary of substituting our judgment for that of the district court." (quoting *United States v. Hairston*, 502 F.3d 378, 385–86 (6th Cir. 2007))). Rather, we may do so only if the district court has abused its broad sentencing discretion.

Above-Guidelines sentences, by and large, are no exception. *Phinazee*, 515 F.3d at 514. After *Booker*, sentencing judges are free to deviate from the Sentencing Guidelines when they deem it appropriate. *Rayyan*, 885 F.3d at 442 (noting that post-*Booker* sentencing judges "should not—in truth, may not—lash themselves to the guidelines range"). Before doing so, however, we require the district court to consider the § 3553(a) sentencing factors and weigh them appropriately. *Id.* Those factors, among others, include the nature of the offense, the defendant's criminal history and characteristics, the deterrence provided by punishment, the need to protect the public, the sentences available, the sentences established for similar crimes and defendants under the Guidelines, and the "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a).

The district court properly assessed those factors, starting with Brown's robust criminal history. From age 15 on, Brown accumulated nearly three dozen criminal convictions. Some, like the one here, were drug related. And none, the district court noted, had any apparent deterrent effect. (Sentencing Tr. at PageID 168) (noting that 11 months in prison for trafficking heroin did not serve as deterrence). An extensive criminal history like this one is an oft cited reason for varying upwards from the Guidelines. *See United States v. Lee*, --- F.3d ---, 2020 WL 5269820, at *12 (6th Cir. Sept. 4, 2020) (Murphy, J., dissenting) (collecting cases where upward variances based on criminal history have been deemed acceptable).

The district court also noted the harmful nature of the drug Brown chose to peddle: heroin. All too often, its use has fatal consequences. *See* Centers for Disease Control and Prevention, *Heroin Overdose Data*, https://www.cdc.gov/drugoverdose/data/heroin.html (last accessed Aug. 27, 2020) (noting that roughly 15,000 Americans died from a heroin overdose in 2018). And one could hardly blame a judge sitting in Ohio for being sensitive to this crime. The Buckeye State has been hit especially hard by the opioid crisis, a fact recognized during Brown's sentencing. *See* National Institutes of Health, *Opioid Summaries by State*, https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state (last accessed Aug. 27, 2020) (noting that Ohio has the fourth highest opioid-involved overdose death rate in the United States); (Sentencing Tr. at PageID 155) (noting the harm "driven by the heroin epidemic in this area"). This notable public policy consideration coupled with other factors fairly justified the variance here. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009) ("[T]he authority of district courts to reject the Guidelines on policy grounds follows inexorably from the Court's holding in *Booker* that the Guidelines are advisory only."); *see also United States v. Ford*, 724 F. App'x 428, 434 (6th Cir. 2018) ("[T]he district court specifically articulated its policy differences with the Commission as

being predicated on local, not national, conditions that have recently and rapidly changed— specifically the heroin epidemic in Ohio."). *But cf. United States v. Demma*, 948 F.3d 722, 727– 28 (6th Cir. 2020) (finding that policy grounds did not justify a sentencing variance where, unlike here, the child pornography Guidelines at issue relied on Congress's own value judgments).

So too, the district court explained, does the fact that Brown's sentence was aligned with those imposed on comparable defendants. The national sentencing average for a defendant sentenced under the same statute and sharing Brown's criminal history is 111 months, almost double the 60 months Brown received. *See United States v. Clemons*, 757 F. App'x 413, 418 (6th Cir. 2018) (noting that "we have repeatedly taken national sentencing averages into account in reviewing sentences for reasonableness" (citing cases)). True, the 111-month average reflects crimes more severe than Brown's. But this point was not lost on the district court—it sentenced him well below that average.

It is no surprise that the district court considered these requirements with such care. It was, after all, following the very instructions we gave it just last year. *See United States v. Warren*, 771 F. App'x 637, 643 (6th Cir. 2019). In vacating the sentence entered in *Warren*, we explained that doubling a defendant's sentence to the statutory maximum was substantively unreasonable "based on [defendant's] criminal history without a fuller consideration of whether such a sentence avoids unwarranted sentencing disparities." *Id.* So the district court gave those sentencing factors "fuller consideration" here—it considered Brown's criminal history, the lack of deterrence from prior punishments, the seriousness of his crime, and the lower-than-average sentence for similar crimes. With the district court having upheld its end of the bargain, how can we not do the same?