NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0042n.06

No. 11-1885

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 08, 2013***

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MICHAEL RINCKEY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GREG MCQUIGGAN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:    BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

**MERRITT, Circuit Judge.** Michael Rinckey, a Michigan prisoner represented by counsel, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Rinckey pled guilty to first-degree home invasion and conspiracy to commit second-degree home invasion. He received consecutive sentences of 75 months to 20 years on the first-degree home invasion conviction and 57 months to 15 years for the conspiracy conviction. He then filed a motion to withdraw his plea, which was denied by the Michigan trial court. The Michigan Court of Appeals denied Rinckey's leave to appeal "for lack of merit in the grounds presented." *People v. Rinckey*, No. 276972 (Mich. Ct. App. June 14, 2007). Rinckey's application for leave to appeal to the Michigan Supreme Court was also denied. *People v. Rinckey*, 480 Mich. 926 (2007) (order).

Rinckey's habeas petition claims that (1) his plea was involuntary, (2) he received ineffective assistance of counsel, and (3) the trial court considered improper factors in passing sentence. The district court denied the petition. Memorandum and Order, June 16, 2011, and granted a Certificate of Appealability only on the ineffective assistance of counsel claim. We denied Rinckey's motion to expand his Certificate of Appealability to include the other two issues raised in his habeas petition. Because we agree with the district court's well-reasoned opinion, we affirm the judgment of the district court.

**I.**

In February 2004, Rinckey and two coconspirators, Michael Locklear and Shannon Sniff, learned that an elderly woman, Mary Odell, kept bags of silver coins hidden in her basement. The three planned to steal the coins and began watching Ms. Odell's home. Conveniently and unfortunately, Ms. Odell inadvertently left her house keys in the door, which Locklear stole and used to gain entry to the house late one night while Rinckey kept watch outside the house. Ms. Odell came out of the house and confronted Rinckey, but Rinckey and Locklear made off with six bags of coins. Several nights later, Locklear and Sniff, without Rinckey, returned to Ms. Odell's house to steal the remaining coins. A friend of Ms. Odell's, 72-year-old Harold Kalbfleich, was in the house in an effort to protect Ms. Odell and her property. Locklear shot and killed Kalbfleich and was subsequently convicted of first-degree murder. Rinckey was charged with first-degree home invasion for his participation in the first theft of coins from the Odell home. He was also charged with conspiracy to commit second-degree home invasion for his part in the ongoing conspiracy that led to the second break in and the death of Kalbfleich. After rejecting the first plea offer, Rinckey

pled guilty to both charges. The state trial court sentenced Rinckey at the top of the guideline range for each charge, which resulted in a minimum of 75 months for the first-degree home invasion charge and a minimum of 57 months for the conspiracy to commit second-degree home invasion, and ordered the sentences to run consecutively. Rinckey was appointed new counsel to pursue his appeal. Appellate counsel filed a motion to withdraw the plea, for an evidentiary hearing, and for resentencing asserting essentially the same claims raised in the habeas petition: the plea was involuntary, trial counsel was ineffective, and the trial court considered improper factors in sentencing. After the motions were denied by the state trial court and the denials affirmed on appeal, Rinckey filed this habeas petition.

## II.

A habeas petitioner is entitled to a writ of habeas corpus if he can show that the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Michigan trial court rejected Rinckey's ineffective assistance of counsel claim on the merits, Hearing Tr. on Motion to Withdraw Plea, Feb. 28, 2007, at 52, and the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Rinckey*, No. 276972 (Mich. Ct. App. June 14, 2007). Under the Antiterrorism and Effective Death Penalty Act, we give a high degree of deference to factual findings of the state court. *See* 28 U.S.C. § 2254(d)(2).

A Certificate of Appealability was granted only as to the ineffective assistance of counsel claim. Specifically, Rinckey claims he was denied effective assistance of counsel from his trial

counsel, Gerald Lykins, because Lykins (1) did not inform him of the possibility of receiving consecutive sentences for the two crimes to which he pled guilty; (2) did not accurately advise him of the applicable sentencing guideline ranges for the crimes; (3) incorrectly advised him that he could not withdraw his plea at sentencing; and (4) failed to advise him that the counts that were dismissed as part of the plea bargain could be taken into account in sentencing.

In assessing whether Rinckey received effective assistance of counsel in his plea negotiations, we look to the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, Rinckey must prove that (1) counsel's performance was deficient, and (2) he was prejudiced by the ineffective assistance. *Id*. at 687. This standard applies during the plea-negotiation process. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]he voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."). Failing to advise a client of factors that could negate the benefit of a guilty plea may render the plea involuntary. *See Miller v. Straub*, 299 F.3d 570, 580-81 (6th Cir. 2002).

Applying these standards, trial counsel had an obligation to ensure that his client understood that he faced the possibility of consecutive sentences. In denying the motion to withdraw the plea, the Michigan trial court made a factual finding on the record that Rinckey's trial counsel did inform Rinckey of the possibility of receiving consecutive sentences. Motion to Withdraw Plea Hearing, Feb. 28, 2007, Tr. at 51 ("[I]t was clear that [defense counsel] and Mr. Rinckey understood that

4

consecutive sentencing and a higher-than-hoped for guideline range was likely applicable.")[1] During the hearing on the motion to withdraw the plea, the Michigan trial court made reference to numerous instances in the state-court record over the course of the lengthy plea negotiations that demonstrated Rinckey knew about the possibility of consecutive sentences. Our review of the state-court record leads us to conclude that the Michigan trial court was not clearly erroneous in its finding. Some of the more salient examples relied on by the state trial court in making its finding include a letter from the prosecutor to Rinckey's trial counsel on December 28, 2005, stating:

> My calculation of the guidelines for the home invasion first charge is 30 to 50 months. For the conspiracy charge, the guidelines are 12 to 24 months. In the event of a trial and conviction, which I consider likely, I will be asking for consecutive sentencing and an upward departure from the sentencing guidelines. If I am successful, your client could face over 20 years in prison.

*Id*. at 43-44. Rinckey rejected this offer and it was withdrawn. After this offer was rejected, interviews with Rinckey and police investigation led to further armed robbery and firearm charges against Rinckey in two unrelated cases. The parties negotiated a new plea agreement that called for Rinckey to plead guilty to the first-degree home invasion and second-degree conspiracy to commit home invasion charges relating to the events at the Odell home. In exchange, the prosecutor agreed to dismiss the unrelated armed robbery and firearm charges and also agreed not to file any further charges relating to events at the Odell house. There was no reference to sentencing in the plea agreement.

---

[1] The same Michigan state court judge who had accepted Rinckey's plea and sentenced him also presided over Rinckey's motion to withdraw his plea.

In finding that Rinckey knew about the possibility of consecutive sentences, the state trial court referred to the plea hearing held on April 3, 2006. *Id*. at 46-49. Under oath, Rinckey acknowledged the terms of the plea agreement and denied repeatedly that anything had been promised him beyond what was in the plea agreement. The trial judge specifically told Rinckey, "[I]f I accept your plea, you are giving up any claim that your plea was the result of some promise or threat that wasn't brought out or disclosed on the record here today. Do you understand that?" Rinckey answered yes. *Id*. at 46-47 (citing Plea Hearing, Apr. 3, 2006, Tr. at 8. Rinckey confirmed to the trial judge a few moments later that the plea agreement was his "complete understanding" with the prosecutor. Plea Hearing Tr. at 11. As required under Michigan law, the trial court informed Rinckey during the plea hearing that the first-degree home invasion conviction was punishable by up to 20 years in prison and that the conviction of conspiracy to commit second-degree home invasion carried a maximum of 15 years imprisonment. *Id*. at 10. There was no discussion on the record as to whether the terms would run concurrently or consecutively. At the conclusion of the hearing, the trial court asked Rinckey if he was satisfied with the service of his attorney, to which Rinckey replied in the affirmative. *Id*. at 16.

In finding that counsel had been effective, the state trial court also relied on a telephonic hearing it held with counsel following the plea hearing where defense counsel requested postponement of the sentencing hearing because he had just received the presentence report and needed more time to go over it with Rinckey, who was not present during the telephonic hearing. Motion to Withdraw Plea Hearing Tr. at 45-46. During this hearing, the prosecutor repeated his intention to seek an upward departure and consecutive sentencing. The trial court granted Rinckey's

motion to postpone the sentencing hearing and directed the parties to brief the issues of the appropriate guideline ranges, consecutive sentences and upward departure. Motion to Postpone Sentencing Hearing, May 23, 2006, Tr. at 22.

The trial court also relied on testimony from the sentencing hearing held on June 12, 2006, in denying the motion to withdraw the plea. Motion to Withdraw Plea Hearing Tr. at 45-46. At the sentencing hearing, the trial court allowed both parties to present argument as to the proper sentence to be imposed on Rinckey. *Id.* Defense counsel acknowledged that the sentencing guidelines were "accurately scored," but argued that it was improper for the court to consider the two dismissed charges when sentencing Rinckey because they were unrelated to the home invasion to which Rinckey pled guilty. Counsel also asked for leniency due to the fact that, although Rinckey was still part of the conspiracy, he was not present when Kalbfleich was murdered in the Odell home by Locklear. Defense counsel also represented to the state trial court that "Mr. Rinckey understands[] that it's completely within your discretion to sentence him consecutively and that's what you intend to do." Sentencing Hearing, June 12, 2006, Tr. at 15. At the close of defense counsel's argument and request for leniency, the court asked Rinckey if he had anything to add before sentencing, to which Rinckey replied no. *Id*. at 19. The trial court then went on to explain thoroughly the reasoning behind its decision to sentence Rinckey to consecutive sentences of 75 months to 20 years for the first-degree home invasion and 57 months to 15 years for the conspiracy to commit second-degree home invasion.

In explaining its reasons for denying the motion to withdraw the plea and the request for an evidentiary hearing, the state trial court reviewed testimony from each of the previous hearings and

stated that it could find no "indicia on the record to indicate that something untoward or improper may have happened or poor lawyering might have occurred[.] I look for some hint that along the way there was a concern or there might have been some misunderstanding . . . . I have zero instances where Mr. Rinckey has raised any concern with counsel . . . ." Motion to Withdraw Hearing Tr. at 49-51.

Our review of the law regarding ineffective assistance of counsel during plea negotiations, coupled with the factual findings by the state trial court that Rinckey's trial counsel advised him of the possibility of receiving consecutive sentences, leads us to conclude that Rinckey has not shown that his counsel's performance was deficient. Rinckey pled guilty to the two home-invasion charges, the plea agreement made no mention of sentencing, the state trial court informed him of the maximum sentence for each count during his plea agreement, and Rinckey made no indication at either the plea hearing or his sentencing hearing, even when directly asked by the judge, that he was dissatisfied with his counsel's representation or that he wanted to withdraw his plea. He told the state trial court at his plea hearing that no promises had been made to him outside of what was in the plea agreement. The record indicates that consecutive sentencing was contemplated from the start and Rinckey's counsel argued against it, including filing briefs on that specific issue before sentencing.[2]

---

[2]In his briefs filed in our Court, Rinckey makes numerous references to an "upward departure" in his sentence. The state trial court specifically stated it did not impose an upward departure, Motion to Withdraw Plea Hearing Tr. at 45 ("I did decide to not provide for an upward departure . . . ."). The state-court record clearly demonstrates that the sentence for each crime was within the applicable guideline range.

Rinckey further claims that in pleading guilty he relied on trial counsel's underestimation of the guideline range, false assurances that the charges dismissed under the plea bargain could not be considered in sentencing, and counsel incorrectly informing him that he could not withdraw his guilty plea prior to sentencing. As with the consecutive-sentencing issue, the record belies Rinckey's assertions. At the plea hearing, Rinckey denied that he had been promised anything beyond what was in the plea agreement, and the plea bargain is silent as to sentencing. At the plea hearing, the trial court correctly set out the ranges and maximum sentences Rinckey faced for each count. As to underestimating the guideline range, defense counsel agreed at the sentencing hearing that the guideline calculations were correct. Sentencing Hearing Tr. at 9 ("We have reviewed the sentencing guideline range and scoring . . . . [W]e find them to be accurately scored."). Rinckey did not indicate to the trial judge at any time that he had a different understanding. As to Rinckey's claim that trial counsel incorrectly advised him that he could not withdraw his plea prior to sentencing, the Michigan trial court made a specific finding when denying the motion to withdraw the plea that he had "no objective indicia" from the sentencing hearing that Rinckey wished to withdraw his plea, even after questioning him about whether he was satisfied with the representation he had received and offering him the opportunity to say anything he liked. Motion to Withdraw Hearing Tr. at 53-54. As with the consecutive-sentencing issue, these other allegations of ineffective assistance of counsel by Rinckey were also properly rejected by the state trial court.

The state trial court did not err in refusing to hold an evidentiary hearing. The state trial court carefully went over the record during the hearing on the motion to withdraw the plea and found nothing that would indicate Rinckey was unaware that he faced consecutive sentences or that his

counsel told him he could not withdraw his plea. In particular, he stood before the state trial judge at both his plea hearing and at sentencing and gave no indication that he was surprised at his sentence or that he wanted to withdraw his plea, even when directly asked by the judge if he wanted to say anything. An evidentiary hearing was not needed in the face of the state-court record. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Rinckey argues in his reply brief that two affidavits, one from him and one from his mother, were admitted into evidence by the state trial court and should be considered as evidence to support his claims that he was unaware of the possibility of consecutive sentences and that his trial counsel told him he could not withdraw his plea at sentencing. Rinckey also argues that the affidavits support the need for an evidentiary hearing on his ineffective assistance of counsel claim. However, the state trial court did not find them to be proper affidavits under Michigan law, but stated that even if it accepted the affidavits, they would not provide sufficient factual support for the relief sought, including holding an evidentiary hearing. Motion to Withdraw Plea Hearing Tr. at 52-53.

Rinckey cannot show that his trial counsel's performance was ineffective. The record shows that consecutive sentences were discussed from the early stages of the case and continued right up through sentencing. The terms of the plea bargain included only for Rinckey to plead guilty to the two offenses concerning the Odell home invasions and for dismissal of the two unrelated charges. Rinckey stated in open court that there were no additional promises made that were not on the record. He told the Michigan trial court that he was satisfied with his counsel's representation.

10

Due to the lack of a finding of deficiency on the part of counsel, the district court did not address whether Rinckey was prejudiced. Mem. and Order at 18 . We agree with the district court's finding that the Michigan trial court's conclusion that Rinckey's counsel informed him of the possibility of receiving consecutive sentences. We also agree with its conclusion that counsel's performance was not otherwise deficient based on the state-court record. We do not therefore review the prejudice prong except to note that Rinckey does not claim that he would have rejected the plea and gone to trial had he known about the consecutive sentences. As the Michigan trial court pointed out, the plea Rinckey accepted was a "pretty good deal" as he faced a far longer sentence had he gone to trial and been convicted of all the charges against him, which included the two to which he pled guilty and the serious charges that were dismissed under the plea agreement.

For the foregoing reasons, we affirm the judgment of the district court.