Frank **CHRISTOPHER**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 15-2027

United States Court of Appeals, Sixth Circuit.

Decided and Filed: August 1, 2016

ON BRIEF: Joan Ellerbusch Morgan, Federal Defender Office, Flint, Michigan, for Appellant. Shane Cralle, United States Attorney's Office, Detroit, Michigan, for Appellee.

Before: SUTTON, GRIFFIN, and DONALD, Circuit Judges.

## OPINION

SUTTON, Circuit Judge.

After the government charged him with peddling cocaine, Frank Christopher hired a lawyer. The lawyer and client, says Christopher, developed an unusual professional relationship, which involved getting high more often than preparing a legal defense. Over the course of the representation, the lawyer allegedly used cocaine with Christopher more than twenty times, including several times immediately before court hearings. This attorney-client cocaine use, says Christopher, caused him to forgo a favorable plea deal and landed him in prison for ten years rather than just three. All of this would present a compelling claim of ineffective assistance of counsel—if it were true. But the district court held an hour-and-a-half-long hearing about the allegations and did not believe them. It thus denied Christopher's § 2255 motion to vacate his sentence. Seeing no clear error, we affirm.

The government had considerable evidence to support its charges that Christopher conspired to possess and distribute cocaine. See 21 U.S.C. §§ 841(a)(1), 846. It had recordings of ten phone calls in which he negotiated purchases of the drug for later distribution, ready to play to a jury. It had testimony from the leader of the conspiracy and another coconspirator that Christopher had bought the drug for resale. And it had already convicted many of Christopher's coconspirators based on similar evidence.

The government offered Christopher a plea deal. If Christopher admitted his guilt, the government would reduce the charges, making his recommended sentence 30–37 months rather than 151–188 months. Many of his coconspirators took the deal.

Christopher did not. He went to trial, where a jury found him guilty and a judge sentenced him to the statutory minimum of 120 months. 21 U.S.C. § 841(b). He did not appeal.

Three months later, Christopher claimed ineffective assistance of counsel. He rejected the plea deal, he said in a letter to the court, because his attorney, a man named Thomas Warshaw, "failed to properly advise me about taking [the] deal ... due to his cocaine abuse." R. 2308 at 1. That caught the court's eye. It construed Christopher's letter as a § 2255 motion and appointed new counsel, who added meat to the letter's bones. Warshaw's cocaine use, the supplemental motion maintained, caused him to give poor advice, including most harmfully his advice "that the government's case was weak and conspiracy was difficult to prove." R. 2530-1 at 1. "Based on that advice, [Christopher] went to trial." Id. With more sober counsel, the motion added, Christopher would have accepted the plea bargain offered by the government.

The district court did not think these allegations, even if true, would prove ineffective assistance of counsel. It thus denied Christopher's § 2255 motion without giving him an evidentiary hearing.

We vacated that decision. "Christopher has alleged sufficient facts to support, if true, a finding that he received ineffective assistance," we held. Christopher v. United States, 605 Fed.Appx. 533, 536 (6th Cir. 2015). If Christopher were telling the truth, he did not know of the government's strong case against him, and he suffered prejudice in rejecting the favorable plea. Id. at 536–37. We remanded for an evidentiary hearing to determine whether Christopher's allegations were true. Id. at 537–38.

The district court held a hearing in which four witnesses, including Christopher and Warshaw, testified. After the hearing, the court found Warshaw, not Christopher, credible and again denied the § 2255 motion.

■ On appeal, Christopher claims that the district court botched its assessment of the witnesses and their testimony. He faces a steep climb in making this argument, needing to leave us "with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (discussing the standard for reversing a trial court's findings of fact).

At the evidentiary hearing, Christopher and Warshaw presented two distinct stories, only one of which could be true:

- Did Warshaw use cocaine with Christopher? Never, Warshaw said. About "20 to 30 times," including immediately before some court hearings, Christopher remembered. R. 2734 at 31.

- Did Warshaw review the discovery materials with Christopher? Yes, many times, testified Warshaw. "Just once," while they were high, said Christopher. *Id.* at 23.

- Did Warshaw inform Christopher that "the government had a weak case" and conspiracy charges were "difficult [ ] to prove"? "No," "[a]bsolutely not," testified Warshaw. *Id.* at 52. Yes, several times, Christopher responded.

- And, most importantly, did Warshaw advise Christopher to reject the plea? The opposite, said Warshaw: I "attempted to induce him to plead." *Id.* at 51. That's not true, testified Christopher, or else I would have taken the deal.

■ Both accounts cannot be true. Faced with starkly different views of the facts, either one of which has ample evidence to support it, "the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In he-said, he-said cases like this one, that means the factfinder does not clearly err in picking one "he" over the other so long as there is support for each account. That is this case. As the finder of fact, Judge Edmunds thus did not clearly err in finding Warshaw "credible" while finding Christopher's credibility "very much undercut." R. 2734 at 67.

■ Judge Edmunds stood on firm ground in making this choice. As we "recognize[d]" in ordering the evidentiary hearing, Judge Edmunds was "in the best position to gauge [Christopher's] credibility." 605 Fed.Appx. at 538. And she, not we, "had the opportunity . . . to observe Mr. Warshaw through the pretrial proceedings and the trial." R. 2734 at 66–67. While "we review transcripts for a living," she assesses live witnesses for a living, and we must account for this "ring-side perspective" when reviewing a trial judge's findings of fact. *United States v. Poynter*, 495 F.3d 349, 351–52 (6th Cir. 2007). On that basis, she observed, "[T]here was nothing to suggest that [Warshaw] did not have full understanding of what was happening, full commitment to the representation of Mr. Christopher." R. 2734 at 67. "[R]ight up to the very last minute," she continued, he "was trying to convince Mr. Christopher to take the plea offer in this case," but "Mr. Christopher didn't want to do it." *Id.*

Once we accept Warshaw's version of events, that dooms Christopher's § 2255 motion. It means Warshaw never did cocaine with Christopher. It means he reviewed the discovery materials with Christopher and explained that "the government would be able to sustain their burden in the case." R. 2734 at 51. It means he

"discussed [the plea deal] with" Christopher "at great length" and "attempted to induce him to plead." R. 2532 at 8; R. 2734 at 51. It means he rendered effective assistance of counsel. And it means Christopher's knowing and voluntary decision to go to trial should be respected, painful though the effects of that decision now may be.

What of the two other fact witnesses at the evidentiary hearing? One witness, it is true, testified that in a previous representation Christopher had paid Warshaw with bartered cocaine. But this witness, Christopher's "long time" friend, R. 2734 at 5, did not observe any such thing happen in this case. Another witness, it is also true, thought he saw Warshaw use cocaine once before, possibly during his representation of Christopher. But this witness admitted he was foggy on the details due to "some memory impairment from a car accident," *id.* at 11, and he "d[id]n't know" if what he saw was actually cocaine, *id.* at 17. These sizeable gaps in the testimony provided ample reason for the district court to discount it.

Christopher adds that Warshaw's confusion at a pretrial conference showed he hadn't reviewed the discovery materials. "That is one possibility" of what happened, "but it is not the only one, and above all it was not the one the district court credited." *United States v. Stafford*, 639 F.3d 270, 276 (6th Cir. 2011). The district court thought Warshaw was prepared and rendered effective counsel, and the record permits that conclusion.

In the last analysis, Christopher's current attorney may have summed it up best: "[W]hether or not [Warshaw's] performance was deficient as a result of the cocaine or otherwise ... depend[s] on the [c]ourt's determination as to which of the two witnesses is more credible." R. 2734 at 61. Because the court reasonably conclud-

ed the "more credible" witness was Warshaw, not Christopher, *id.* at 68, Christopher's § 2255 motion fails.

For these reasons, we affirm.