<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0397n.06

Case No. 18-1957

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JERON GASKIN, | ) | **FILED**<br>Aug 01, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner–Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | MICHIGAN |
| | ) | |
| Respondent–Appellee. | ) | |
| | ) | |

**BEFORE:  COLE, Chief Judge; GRIFFIN and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.**  Jeron Gaskin was charged with one count of conspiracy to distribute narcotics and two counts of possession with intent to distribute narcotics.  Each of these counts carried a statutory maximum of twenty years' imprisonment, for a total maximum of sixty years' imprisonment.  The government offered Gaskin a plea deal stipulating to a Guidelines range of 15 to 20 years and recommending a sentence of 17.5 years.  Gaskin rejected this offer, went to trial, and was convicted of all counts, after which he was sentenced to 360 months' imprisonment, more than the maximum for any individual count.  Gaskin moved to vacate his sentence under 28 U.S.C. § 2255 on the ground that his counsel was constitutionally ineffective for failing to explain to him that if he rejected the plea deal and was convicted, there was a possibility that he would be sentenced to consecutive terms of imprisonment.  The district court denied that motion, and for the reasons below, we AFFIRM.

"Section 2255 provides federal prisoners with a means to secure a second look at the legality of their conviction or sentence, beyond the direct appeal of right." *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013). "In reviewing a district court's denial of a motion under Section 2255, we apply a clearly erroneous standard to its factual findings and review its conclusions of law *de novo*." *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (quoting *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

Ineffective assistance of counsel claims are governed by the now-familiar *Strickland* standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant has been offered a plea bargain, his counsel is constitutionally deficient if she tells him that his sentences for multiple counts, if convicted, cannot run consecutively.[1] *Magana v. Hofbauer*, 263 F.3d 542, 549–50 (6th Cir. 2001).

---

[1] Gaskin provides out-of-circuit support for the proposition that failing to inform a client of the sentencing consequences of rejecting a plea agreement is as ineffective as affirmatively misleading the client. *See United States v. Aguiar*, 894 F.3d 351, 359 (D.C. Cir. 2018). We have stated that "[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available [to him]." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003); *see also Rinckey v. McQuiggan*, 510 F. App'x 458, 461 (6th Cir. 2013) ("[T]rial counsel had an obligation to ensure that his client understood that he faced the possibility of consecutive sentences."). And here, the government does not argue that Gaskin's trial counsel was effective even if he failed to inform Gaskin of the possibility of consecutive sentences, and

A petitioner is prejudiced by counsel's deficient performance if "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

The parties disagree both over whether Gaskin's trial counsel informed him that the sentences for each count could run consecutively and, if trial counsel did so inform Gaskin, he has shown that he would have accepted the plea.

At a hearing that occurred after Gaskin was convicted but before he was sentenced, the government off-handedly mentioned that Gaskin was facing "up to potentially 60 years because he was convicted on all three counts." Immediately upon hearing this, Gaskin spoke up, telling the court that "I didn't understand about the 60 years part. I didn't understand what he just meant by that." Gaskin then said:

> Your honor, I said this was my first time hearing, after the case was done, that my cases was trying to get ran consecutive. I never knew nothing what consecutive mean. Was never told before trial by my prosecutors or my lawyers or nobody that it was a possibility it could get ran consecutive.
>
> Every time I asked my lawyer, I was told this was one charge and that my cases was all getting ran under a 20-year max and my plea was 17 years. So, I couldn't—17 years and 20-year max, that's why I went to trial, sir. And now I'm hearing 60 years and I'm really confused in this courtroom, sir. I never heard of this.

At an evidentiary hearing before the district court, Gaskin testified that after reading the indictment he understood that the maximum sentence on each count was 20 years, so he thought

---

we thus assume for the purpose of this opinion that if Gaskin can show that his trial counsel failed to inform him of the possibility of consecutive sentences, Gaskin has satisfied the first *Strickland* prong.

that he was facing a maximum of 20 years' imprisonment. Gaskin also testified that when his trial counsel, Mr. Randolph, presented the plea agreement, Gaskin "asked him like what's the most they can give me, and that's when he had told me like they can give you 20" and that Randolph told Gaskin that he should accept the plea agreement because "[Gaskin] can get a couple more years, we might as well just go ahead." This testimony was broadly corroborated by Gaskin's mother and sister.

Against this evidence, the district court weighed the fact that at each of his three arraignments, Gaskin had told the court that he understood the indictment and the potential penalty for each count. And at his first arraignment, the magistrate judge told Gaskin that each count carried a maximum of 20 years' imprisonment and said "[n]ot that they are necessarily concurrent penalties but it is the same maximum penalty under the statute."

Also, although Randolph did not testify that he had specifically told Gaskin that he was facing a maximum of 60 years, Randolph did testify that he "told Mr. Gaskin that a sentence of 20 years is better than life" and explained that statement as "[m]eaning that if he, if he was found guilty and allowed the judge to sentence him, that he possibly could spend the rest of his life in prison, whether that—that didn't necessarily mean that the sentence would be life, but it would be a lot of years." This cohered with an earlier affidavit signed by Randolph in which he wrote that "[d]uring discussions with Mr. Gaskin to persuade him to accept the Rule 11 agreement, I told him that 15–20 years is better than a life sentence, Mr. Gaskin again refused, intimating that (paraphrasing) 20 years is like a life sentence to him."[2]

---

[2] Gaskin denied having made this statement.

After considering all of the testimony and the other evidence proffered to the court, the district court determined that "Gaskin has not shown that his attorney performed deficiently during plea bargaining." Gaskin's first hurdle on appeal is challenging this factual determination.

Gaskin "faces a steep climb in making this argument, needing to leave us 'with the definite and firm conviction that a mistake has been committed.'" *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016) (quoting *U.S. Gypsum*, 333 U.S. at 395). "While 'we review transcripts for a living,'" the district court "assesses live witnesses for a living, and we must account for this 'ring-side perspective' when reviewing a trial judge's findings of fact." *Id.* (quoting *United States v. Poynter*, 495 F.3d 349, 351–52 (6th Cir. 2007)). In cases such as this, where two parties testify to different versions of the facts, so long as both versions have evidence to support them, "the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574 (citations omitted).

Here, the district court specifically found Randolph's testimony credible and also that Gaskin was not a credible witness, in part because of his "obvious incentives to be untruthful."[3] Because there is evidence supporting Randolph's testimony, the district court's determination that Randolph was more credible cannot be disturbed. And having reviewed the remaining evidence proffered by the parties before the district court, we cannot say that the district court clearly erred in determining that Randolph informed Gaskin of the potential sentence should he go to trial.

---

[3] Gaskin spends a not insignificant portion of his opening brief arguing that the district court's finding that Gaskin's testimony was not credible "runs afoul of a 140 year-old statute and [S]upreme [C]ourt case law." The gist of his argument appears to be that, at one point, the common law prohibited the testimony of interested parties; American jurisprudence has since rejected that principle; and the district court's finding that Gaskin was not credible because of his interest in the outcome was an illegitimate readoption of the principle. But the principle is well recognized that "[b]ias may be induced by a witness' . . . self-interest" and "[p]roof of bias is almost always relevant because the . . . finder of fact and weigher of credibility[] has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984).

Because Gaskin has not therefore shown the first prong of *Strickland*, we need not address the second prong, and we **AFFIRM**.